## Influential Savings & Loan Association v. Valentine

*Franchot Gloub*, for plaintiff.
*David A. Searles*, for defendant.

GAFNI, *J.*, September 23, 1982—On June 24, 1982, plaintiff Influential Savings and Loan Association (Influential) filed a complaint in foreclosure against defendants Robert and Elizabeth Valentine (Valentines). The Valentines filed preliminary objections to the complaint alleging that Influential has failed to comply with various provisions of Act 6 of 1974 (Act),[1] and, specifically, with sections 403-04 and 406 thereof.

---

1. 41 P.S. §§101 et seq.

## I FACTS

Pursuant to section 403 of the Act (section 403), on April 29, 1982, Influential sent a notice of intention to foreclose and accelerate the balance of a loan given by Influential to the Valentines and secured by a mortgage on the Valentine's home. The Valentines raise the following issues in their preliminary objections:

(1) does section 403 require the notice to state the exact amount of money that must be tendered to cure the default?;

(2) is the notice deficient under section 403 because it states that if foreclosure occurs, the mortgaged premises will, rather than may, be sold and the mortgagors' interest in the premises will thereupon terminate?;

(3) is the notice deficient under section 403 because it states that the mortgagor will have to pay title report costs if the default is cured after 30 days from the notice day, but before foreclosure proceedings commence?; and,

(4) does section 403 require the notice to state that the mortgagors have a right to have someone cure the default on their behalf?

## II DISCUSSION

A. Issue 1: Does Section 403 Require the Notice to State the Exact Amount of Money that Must be Tendered to Cure the Default?

The notice provides in pertinent part:

(Paragraph 1) As of the date of this notice, THE MORTGAGE IS IN DEFAULT STATUS because of non-payment of the following: (Figures are only good until April 30, 1982). Also, you are required to pay any attorney fees that are specified and allowed within the above described act.

Seven (7) Monthly Payments
at $80.05—      $560.35
Late Charge      25.60
     Total Amount Due      585.95

(On May 1st, another Payment of $80.05 will be due)

(Paragraph 2) You may CURE the DEFAULT and restore the mortgage to the same position as if the default had not occurred by paying to the Association within thirty (30) days from the date of this letter the TOTAL AMOUNT DUE as stated above, plus an additional monthly installment if payment is made after the last day of next month, plus additional late charge if due at time of payment and not included above. A late charge is collected for each mortgage payment unpaid by the 15th day of the month it is due.

(Paragraph 3) If payment is made after thirty (30) days from the date of this letter, but before foreclosure proceedings have been started, the amount you will have to pay will also include the regular monthly installments and late charges then due, plus if incurred, and (sic) attorney's fee of not more than $50.00 and any title report costs, which amount can be obtained by contacting our office.

(Paragraph 4) After foreclosure proceedings have been started, you have the right to stop the foreclosure action any time up to one (1) hour before the commencement of the Sheriff's sale by paying the entire amount due at the time, which shall include all delinquent installments and unpaid late charges, together with all legal fees actually incurred, costs and other sums related to the foreclosure action, which amount can be obtained by contacting our attorney.

The Valentines claim that paragraph 2 of the

notice violates section 403(c)(3) of the Act[2] because it fails to state the exact amount of money to be tendered to cure the default by not indicating the exact amount of late charges.

This court holds that section 403 does not require a notice to set forth the exact amounts of money which must be tendered to cure the mortgage default as that amount will almost always vary somewhat depending on date of payment and circumstances. However, the notice must otherwise indicate in the pertinent paragraphs that the amounts required to cure the default could be ascertained by contacting the mortgagee or its representative.

In Piper v. Oakes, 10 D. & C. 3d 722 (1979), the Court of Common Pleas of Adams County held that for a notice to be clear and conspicuous as required under the act, it must be "easily understood." Id. at 727. The court also held that under the act it "would be impossible to set forth the precise amount of those sums (necessary to cure the default) in the notice. Id. Rather, the notice is sufficient if it indicates who is required to pay, and that the amounts of money necessary to cure the default will be provided upon request of the mortgagor. Id.

In the instant case, the court finds paragraph 2 of the notice unclear. The paragraph was intended to direct the Valentines to the immediately preceding paragraph containing the table of amounts of money due to derive the various amounts necessary to cure the default when paid at different times.

---

2. Id. at §403(c)(3). This section provides:

(c) The written notice shall clearly and conspicuously state

(3) The right of the debtor to cure the default as provided in section 404 of this act and *exactly* what performance including what sum of money, if any, must be tendered to cure the default: Id. (Emphasis added.)

This court holds that paragraph 1 does not clearly convey to laymen what sums of money, if paid at different times within 30 days of the notice, would cure the default.[3] Paragraph 2 of the notice begins with a lengthy sentence which is confusing in explaining the amounts of money, which, if paid at various times, would cure the default. As noted by Judge Guarino in First Pennsylvania Bank, N.A. v. Johns, et al, No. 480, May term, 1981 (C. P. Phila. County, January 18, 1982) "the notice must inform the residential debtor of his rights in simple, plain, and precise language, understandable to the most uninformed debtor." Id.

Influential's notice also fails because it does not indicate in paragraph 2 that the Valentines could contact Influential or its attorney to determine what amounts of money would be required within 30 days of the notice to cure the default. The notice does indicate in paragraphs 3 and 4 that the Valentines could contact Influential or its attorney for other information. Those sufficiently detailed paragraphs, however, would not make clear to laymen faced with a lengthy foreclosure notice that they may also contact Influential's attorney to obtain information relating to the amount necessary to cure the default under paragraph 2.

B. Issue 2: Is the Notice Deficient Because it States that if Foreclosure Occurs the Mortgaged Premises Will Be Sold, and the Mortgagor's Interest in the Premises Will Thereupon Terminate?

The notice provides in pertinent paragraph:

Should you fail to reinstate the loan as outlined above, the mortgaged premises will be sold at

---

3. One way mortgagors might clear up this infirmity is by setting out, if possible, the specific amounts of money which would cure the default when paid at specific periods of time within 30 days of the notice date.

Sheriff's Sale, which will take place approximately seven (7) to eleven (11) weeks following service of the Complaint in Mortgage Foreclosure, at which time your ownership interest in the mortgaged premises will be terminated, and thereafter, if occupied, proceedings will be taken to obtain possession of the real estate.

The Valentines claim that this paragraph, by stating that their house *will*, rather than *may*, be sold at a foreclosure sale, is unnecessarily misleading and confusing, and is an *in terrorem* device.

Section 403(c)(5) of the Act provides that "(t)he written notice shall clearly and conspicuously state . . . (t)he method or methods by which the debtor's ownership or possession of the real estate may be terminated. . . . " Although the notice paragraph at issue may not accurately set forth the exact consequences of the Valentine's inaction on their alleged default payments (in that the premises may not be sold at a sheriff's sale), this court holds that it is not deficient for that reason. Mortgagors accused of defaulting on their mortgage payments cannot rightfully claim they are confused or threatened by a notice that their house "will," rather than "may," be sold at a foreclosure sale. Indeed, had the word "may" been used, this court can well envision an argument by mortgagors that such tentative language lulled them into a false belief that their house would not be sold.

C. Issue 3: Is the Notice Deficient Because it States that the Mortgagor Will Have to Pay Title Report Costs if the Default is Cured After 30 Days from the Notice Date, But Before Foreclosure Proceedings Commence?

The Valentines claim that under section 406(3) of the Act, the only cost that can be assessed the

mortgagor after 30 days from the notice date, but prior to filing a foreclosure action, is a $50 attorney's fee. This claim is without merit. Section 404(a) and (b) of the act supersede "the provisions of any other law," including section 406(3), and allow the residential mortgage debtor to cure his default up to one hour prior to commencement of bidding at the sheriff's sale by paying, inter alia, "any reasonable fees allowed under section 406 and the reasonable costs of proceeding to foreclose as specified in writing by the residential mortgage lender actually incurred to the date of payment."[4] Therefore, the act does not limit the costs recoverable by the mortgage lender to attorney's fees under section 406. Rather, additional "reasonable costs of proceeding to foreclose" under secton 404, which may include title report costs, are also recoverable.

D. Issue 4: Does Section 403 Require the Notice to State that the Mortgagors have a Right to have Someone Cure the Default on Their Behalf?

The Valentines claim that the notice is deficient because it does not inform them of their right to have someone cure the default on their behalf. By reason of the prior holdings in this opinion, this court need not reach this issue now. It is apparent, however, that the inclusion of the phrase relating to other persons is preferable.

For the foregoing reasons, the complaint will be stricken without prejudice.

## ORDER

And now, September 23, 1982, it is hereby ordered that defendants' preliminary objections are sustained and plaintiff's complaint in mortgage foreclosure is dismissed.

---

4. 41 P.S. §404(a) and (b).